In re HARMSTON'S ESTATE.
HARMSTON et al. v. CALDER

No. 7362. Decided August 22, 1950. (221 P. 2d 586)

Rehearing denied December 11, 1950.

Petition for revocation of letters of administration for dilatoriness where knowledge existed and no prior objection made. 72 A. L. R. 949. See, also, 21 Am. Jur. 458.

*R. J. Hogan,* Salt Lake City, for appellant.

*J. Rulon Morgan,* Provo, *Elias Hansen,* Salt Lake City, for respondent.

PRATT, Chief Justice.

This is an appeal from a decree in probate allowing the account of an administrator de bonis non in a contest initiated by a petition by the beneficiaries of the estate involved, seeking the revocation of the letters of administration of that administrator de bonis non. As the whole estate matter involves a period of many years and many ramifications, it will probably simplify a consideration of the issues if the estate is followed through step by step.

Marion Eugene Harmston, a resident of Duchesne County, Utah, died April 13, 1922; and left surviving him as heirs at law, Isabelle Thurston Harmston, his widow; Marion Eugene, Roger T. and Carl Frederick, sons; and one daughter, Helene E. Harmston.

The widow was appointed administratrix of the estate on June 10, 1922. Notice to creditors was published in

1922, and the time for presentation of claims expired in that year. She filed an inventory and appraisement June 14, 1926. One tract of land in South Dakota had previously been sold by court order. She reported the following property which was appraised as indicated:

Lots 29, 30, 31 and 32 in Block nine, Plat "A", Roosevelt, Utah with a story and a half frame building.

Appraised at $1,600.00

Lots number 5 to 12 inclusive in Block 16, Plat "A", Roosevelt, Utah, frame residence and improvements thereon.

Appraised at $2,000.00

Lots 8, 9, 10 in Block 32, Plat "A", Roosevelt, Utah, with frame buildings thereon.

Appraised at $ 350.00

Cash in Roosevelt State Bank $ 200.00

Three Cows and One Calf

Appraised at $ 150.00

Three hundred Shares of stock in Texas Standard Oil Company (half interest) and Ten Shares of stock in Texas Standard Oil Company.

Appraised at $ 150.00

$4,950.00

On July 31, 1937, Isabelle Harmston borrowed $4,500 from the Farmers and Merchants Bank, and executed a note and mortgage to that bank. The mortgage covered lots 29, 30, 31, and 32. She signed the note and mortgage in her individual capacity, and also as administratrix of the estate. No approval of the court to mortgage the property was ever secured.

On August 18, 1937, she filed an accounting and a petition for partial distribution to herself of these same lots. In the petition it was alleged that the other heirs had quit

claimed all their interest in the lots to her. It was also alleged in the petition that all the obligations against the estate, except administratrix's fees and attorney's fees had been fully paid. A decree was entered August 30, 1937, confirming the partial distribution in which it is recited that all debts of the estate have been paid except administratrix's fees and attorney's fees.

The money borrowed from the bank was used to erect certain improvements on the mortgaged land, and did not go into the decedent's estate, nor was it intended for the decedent's estate apparently. Later, on October 19, 1937, after the decree of partial distribution, the bank loaned Mrs. Harmston $2,500 more, and took from her another note and mortgage covering the same property, together with another tract. This note and mortgage was signed by Mrs. Harmston in her individual capacity only.

Isabelle Harmston died December 11, 1937 and the Utah Savings and Trust Company was appointed administrator of her estate on March 7, 1938.

On March 22, 1948, the Farmers and Merchants Bank filed a petition in the Marion Eugene Harmston Estate, alleging that it was a creditor of said estate; and that the estate, the administratrix and the heirs were indebted to it; and asking that letters of administration de bonis non be issued.

Pursuant to this petition, letters of administration were issued to Mr. Calder, cashier of the bank. On February 11, 1939, he filed a petition for sale of the real estate listed third in the inventory set out above, and inventoried at $350 as of the August 1922 inventory. On September 9, 1939, this property was re-appraised at $900.00, according to an appraisement filed by Mr. Calder after his appointment.

The petition was prepared and filed by J. Rulon Morgan,

who had previously appeared as counsel for the estate in the petitions heretofore mentioned. He knew of the accounting and the petition for partial distribution that had been filed, approved and granted, previously in the estate. He knew also that the approval of the account and partial distribution recited that all debts had been paid.

On Septeber 25, 1939, a sale of the property was confirmed to Harry W. Larson, for $1,000 payable in monthly installments.

In May of 1941, the attorney, Morgan, acting on behalf of the bank, brought suit to foreclose the mortgage on the land distributed to Isabelle Harmston, that is, lots 29, 30, 31 and 32. This was civil case No. 1932. The estate was not represented by counsel in this suit, and defaulted. On July 17, 1941, a default judgment was entered ordering foreclosure and providing for a deficiency judgment against the estate in the event the property did not bring the full amount of indebtedness on its sale.

The property was purchased by the bank pursuant to the foreclosure of this mortgage and subsequent mortgage given by Isabelle Harmston personally. The property brought the full amount of the indebtedness, and no deficiency judgments were taken.

Harry W. Larson, who purchased lots 8, 9, and 10, defaulted on his contract in 1942, and was evicted from the property by the administrator Calder, who then sold the property to Charles W. Jenkins.

On April 22, 1940, Roger T. Harmston, one of the heirs, filed a petition to revoke Calder's letters of administration and demanded an accounting of Mr. Calder, and asked that letters of administration be issued to him. Mr. Morgan represented Calder as the then administrator, and demurred. The petition was granted, and an accounting ordered; but nothing further was done by Roger T. Harmston to-

ward taking over the administration of the estate at this time, nor was the account filed until August 30, 1947, when, represented by Mr. Morgan, Calder filed the account. The account was contested by an amended petition for revocation of Calder's letters of administration, filed by Roger T. Harmston and joined in by the other heirs. Pursuant to this petition and by agreement of all the parties concerned, Raymond A. Gillis, a son-in-law of the deceased was appointed administrator in place of Calder. It is the court's adjudication upon this accounting and the amended petition for revocation of letters, that is the subject of this appeal.

Calder in his inventory had listed the same property real and personal, as had his predecessor, with the exception of cash in the bank and the three cows and one calf, which he did not list. Of the three tracts of land, only lots 5 to 12 in block 16, and lots 8, 9, 10 in block 32, were appraised. Mr. Calder accounted for the property inventoried in the following ways:

The first tract of land (lots 29, 30, 31 and 32 in block nine) was distributed to Isabelle Harmston by way of partial distribution prior to his administration, and did not come into his hands. The second tract (lots 5 to 12 in block 16) was purchased by Mrs. Harmston from the county at tax sale prior to his administration. The files and papers in the Isabelle Harmston Estate are in evidence and it appears therefrom that this land was being administered in her estate. The third tract (lots 8, 9, 10 in block 32) was sold to Larson and then to Jenkins. He was unable to discover any oil stock, and the oil company was long since defunct, and the only property coming into his possession was the tract sold to Larson then to Jenkins.

The lower court found substantially in accordance with the accounting.

Appellant takes the position that since Calder included

all these items in his inventory that he is foreclosed from explaining that they did not actually come into his possession.

In Bancroft, Probate Practice, Ch. XI, Sec. 550, p. 915, the rule is stated: "The inventory and appraisement however are only prima facie evidence that the representative has received the property named therein. They are not conclusive for any purpose."

Adopting this rule, it was permissible for Calder to show that the various items of property did not come into his possession, with the exception of the one tract of land, and to show the reasons they did not come into his possession, which he did satisfactorily. It was, of course, proper for him in any event to show the amount of money he had on hand for distribution.

The court found that the one tract of land that came into the hands of the administrator had been duly and legally sold, and the full purchase price collected by the administrator, and subsequently conveyed to Charles W. Jenkins as successor in title and interest to Harry W. Larson. The inference to be drawn from this finding is that there was a single sale of the land, duly authorized and confirmed, and an assignment by Larson of his interest, to Jenkins. As a matter of fact, what happened was that after Larson defaulted, the administrator, Mr. Calder, entered into a real estate contract with Charles W. Jenkins and his wife, to purchase the property. The contract was contingent upon confirmation of the sale by the court, and upon obtaining the property from Larson, who was then in possession. Possession from Larson was obtained summarily, but the sale to Jenkins has never been confirmed. Under the statutes in effect at the time of the sale to Jenkins, no authorization for that sale was required. The sale price to Larson was $1,000 plus interest, with installment payments of $12.50 per month, and a down

payment of $150.00. The sale price to Jenkins was $1075, plus interest with the principal other than the initial down payment to be paid in $15.00 monthly installments. The evidence clearly shows that Jenkins did not take as successor to Larson's rights, but rather that he took by virtue of his contract with the administrator after Larson was ousted. Thus, the evidence does not sustain the findings as to this point.

The actual proceeds from the property totaled $1515.00. We are not informed as to whether the property was worth more than $1075, the sale price, in 1942, when it was sold to Jenkins. We see no reason why the sale to Mr. Jenkins could not be confirmed if a re-appraisement as of 1942 is made in conformity with proper procedure and if the sale price is within the permissible limits. There is evidence in the record that the sale of this property was desired by at least some of the heirs; and although all petitions were noticed to the heirs, they did not appear and object to the proceedings until some seven years after these transactions were accomplished.

As previously indicated, the bank petitioned for appointment of administrator as a creditor, and was appointed on this theory. It is contended that the bank was not a creditor as found by the trial court. The foreclosure proceedings against the mortgaged property brought the full amount of the indebtedness, and thus no deficiency was assessed against the estate so the appellants were not injured in any way by the foreclosure of the bank as a creditor of the estate. The appellants had previously given quit claim deeds to this property to their mother, Isabelle Harmston, and the property had been distributed to her from the estate. Thus, the appellants have no interest in that property so far as this estate is concerned. The heirs acquiesced in the appointment of Calder. The record discloses that proper notice was given each heir at every

step in the proceedings, and the heirs do not contend otherwise. Had the heirs contested Calder's appointment there could have been a determination as to whether or not the bank was a creditor. Some of the heirs appear to have assisted in the sale of the property to Larson, and all appear to have been content with the administration. In the petition filed by Roger T. Harmston in 1940, to remove Calder as administrator, he recites that the heirs consented to the administration, and his reason for asking revocation was the expense involved in Calder's administration. Copies of the petition were mailed to all heirs, and it is not contended that they failed to receive such notice. This was in 1940, yet nothing was done by any of these heirs until the amended petition of 1947.

Appellants contend that the administrator should have accounted for the cows and the cash listed in the inventory filed by Isabelle. This would be true, if there was in the record some evidence that these items were still in existence. If they stand unaccounted for by Isabelle as administratrix, then it may be that the estate has some claim against her estate and her bondsmen for the loss, if they have been lost. There are no creditors in the estate, so that the only persons concerned would be the heirs who are the heirs of both estates. Calder testified that he was unable to locate the cows and calf, and that an inquiry revealed no money on deposit in the Roosevelt State Bank, in the name of this estate. Unless some proof is presented as to what became of the cows and calf, and the money, and that they were lost through some defalcation on Calder's part, this objection is not well founded.

Objection is raised to the length of time the estate was kept open. The administrator states that this time was the result of the sale to Larson and Jenkins. A computation of the contract payments on the two contracts indicates that they would extend into 1946. The petition to revoke Calder's letters of administration was

filed April 22, 1940. Calder filed his final account and petition for distribution and discharge in 1947. The controversy initiated by the petition was determined in January 1949. In addition, the matter as litigated was that of having a new administrator appointed, rather than to have the estate closed; and the heirs, knowing of the sale and the fact that the estate remained open made no objection to the continued administration of the estate. Under these circumstances, the objection of the heirs is unfounded.

Appellants object to the Calder accounting upon the ground that the expenses paid were of the administrator's own creation and were unnecessary. In addition to the items previously paid either by Isabelle Harmston as administratrix, or by Calder, a $50.00 administrator's fee and a $100.00 attorney's fee were approved and allowed in the present proceedings, of a requested $187.66 administrator's fee and $306.10 attorney's fee.

An examination of the payments made, indicates that they were made incident to the carying on of the estate under Mr. Calder's administration. They were proper items of expense, and are approved, as is also the moderate fee authorized Calder for administration.

The attorney's fee authorized by the court below, however, stands on a different footing. The attorney first represented the widow as administratrix and particularly in the petition for partial distribution, which recited that there were no outstanding debts against the estate. Then he represented the bank in petitioning for the appointment of Mr. Calder as a administrator, asserting that the bank was a creditor. He followed this by foreclosing the mortgage against the estate, and permitted a default and deficiency judgment to be included in the decree of foreclosure against the estate.. After that he appeared for the estate against the heirs. Obviously there were conflicting interests betwen the various parties Mr.

Morgan represented, and as a result, by the representation, he perhaps misled the court as to the necessity of the proceedings. We cannot countenance his receipt of further fees under such circumstances.

For the reasons given, the disbursements for attorney's fees approved in this proceedings in the sum of $100, is disallowed, and no further attorney's fees are to be allowed this attorney in the case, and the balance of the disbursements are approved.

Respondent has included in his brief a motion to affirm the judgment because the statement of errors is fatally defective. In view of our recent change to practice under court rules of procedure, it is unnecessary to further consider this motion.

Certain other errors are claimed to exist, which are however of a non-prejudicial nature.

The matter is remanded to the lower court for proceedings in conformity with this opinion. Each party to bear his own costs.

WADE, WOLFE, LATIMER and McDONOUGH, JJ., concur.